UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE EDUARDO LIMA (A-078-063-984), | No.  1:26-cv-03753-TLN-CSK |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| WARDEN, GOLDEN STATE ANNEX DETENTION CENTER, et al., | |
| Respondents. | |

Petitioner Jose Eduardo Lima (A-078-063-984), a citizen and native of Mexico, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] He last entered the United States without inspection in approximately 1999 or 2000.  During his time in the United States, petitioner has been arrested by local authorities on multiple different occasions for different charges.  On August 22, 2025, petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") officials.  This habeas action concerns petitioner's detention.  For the reasons that follow, the Court recommends petitioner's writ of habeas corpus be dismissed in part

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).  Petitioner's name is identified as "Jose Eduardo Lima" on the petition.  (ECF No. 1.)  His name on immigration records submitted, such as the Notice to Appear, lists his name as "Eduardo Garcia-Lima", with an AKA of "Joser Linares."  (ECF No. 8-2 at 7.)  His name on the EOIR case status website appears as "Jose Eduardo Garcia Lima."  The Court refers to Petitioner by his name as identified on the petition.

1

and granted in part.

I.      FACTUAL BACKGROUND

Petitioner is a national and citizen of Mexico.  (ECF No. 8-2 at 7.)  Petitioner first entered the United States on an unknown date without inspection.  (ECF No. 8-1 at 2.)  On November 12, 1997, petitioner was returned from the United States to Mexico.  (Id.)  Petitioner re-entered the United States on an unknown date without inspection.  (Id.)  On August 2, 1999, petitioner was returned to Mexico again.  (Id.).  Petitioner again re-entered the United States on an unknown date and was returned to Mexico again on October 5, 1999.  (Id.)  Petitioner most recently entered the United States on an unknown date in approximately 1999 or 2000.  (See id.)  Petitioner has been arrested by local authorities on multiple different occasions for different charges.  (See id. at 2-3.)  Respondents assert the following criminal history for petitioner:[2]  (1) on October 1, 1999, petitioner was convicted of possession of a controlled substance in violation of California Health and Safety Code § 11350; (2) on December 10, 2000, petitioner was arrested for willful cruelty to child in violation of California Penal Code § 273a(b) and for battery in violation of California Penal Code § 243(e)(1); (3) on May 21, 2023, petitioner was arrested for threaten with intent to terrorize in violation of California Penal Code § 422 and convicted on August 23, 2024 of arson of property of another in violation of California Penal Code § 451(d).  (Id.; ECF No. 8-2 at 30-33.)

On August 22, 2025, ICE encountered petitioner outside the Fresno County Superior Court and took him into ICE custody.  (ECF No. 8-2 at 4.)  ICE served him with a Notice to Appear and placed him into Immigration and Nationality Act ("INA") Section 240 (8 U.S.C. § 1229a) removal proceedings, charging him under Immigration and Nationality Act § 212(a)(6)(A)(i), as a noncitizen present in the United States without admission or parole.[3]  (Id. at 7.)  On April 2, 2026, an immigration judge denied his applications for relief.  (Id. at 35-38.).

---

[2]   In their answer, respondents include criminal charges against petitioner that were subsequently dismissed or dropped.  Respondents do not assert detention authority on the basis of dismissed or dropped charges, and the Court therefore does not address these charges.

[3]   Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

Petitioner filed an appeal of the immigration judge's order with the Board of Immigration Appeals, which remains pending.  (ECF No. 8-1 at 3.)  Petitioner has been in continuous detention since August 22, 2025.  (ECF No. 1 at 1.)

## II.    PROCEDURAL BACKGROUND

On May 15, 2026, petitioner filed the petition for writ of habeas corpus.  (ECF No. 1.)  On May 18, 2026, petitioner was ordered to file a motion for a temporary restraining order ("TRO") if he sought emergency relief.  (ECF No. 5.)  Petitioner did not file a TRO motion, and the case was subsequently referred to the assigned magistrate judge.  (ECF No. 6.)  On June 4, 2026, respondents filed a timely response to the petition.  (ECF No. 8.)  On June 11, 2026, petitioner filed a timely reply.  (ECF No. 9.)  Briefing is now complete.

## III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV.    DISCUSSION

Petitioner challenges his continued detention based on the violation of the following: (1) petitioner's arrest and prolonged detention violates the Fifth Amendment procedural due process clause; (2) violation of the Accardi doctrine and agency regulations; and (3) violation of the Fifth Amendment substantive due process clause.  (ECF No. 1 at 5-7.)  Respondents argue that petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(A), as he

3

inadmissible for having committed a crime involving moral turpitude based on his arson conviction.  (ECF No. 8 at 3.)  Respondents further argue that petitioner should be required to challenge whether he is subject to mandatory detention under § 1226(c) before the immigration court in a Joseph hearing.  (Id. at 4 (citing Matter of Joseph, 22 I & N Dec. 799 (BIA 1999).)  Respondents also argue petitioner's detention is separately mandated by 8 U.S.C. § 1225(b) because he entered the United States without inspection.  (Id. at 6-7.)  Respondents contend his continued detention does not violate due process.  (Id. at 4-5.)

### A.    Statutory Basis for Detention

In analyzing petitioner's challenge to his detention, the Court "must first identify the statutory provision that purports to confer" authority for his detention.  Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).  8 U.S.C. § 1226(c) "carves out a statutory category of [noncitizens] who may not be released under § 1226(a)," mandating detention for an alien apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses."  Jennings v. Rodriguez, 583 U.S. 281, 289 (2018) (emphasis in original).  Section 1226(c) mandates detention of any noncitizen who is inadmissible by reason of having committed any offense covered in 8 U.S.C § 1182(a)(2), which includes noncitizens convicted of a crime involving moral turpitude. 8 U.S.C. § 1226(c)(1)(A); 8 U.S.C. § 1182(a)(2)(A)(i)(I).

Respondents argue that petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(A), as his conviction for arson in violation of California Penal Code § 451(d) constitutes a crime involving moral turpitude.  (ECF No. 8 at 3 (citing Ruiz v. Holder, 44 Fed. Appx. 68, 69 (9th Cir. 2011); Rodriguez–Herrera v. INS, 52 F.3d 238, 239 (9th Cir. 1995)).)  Petitioner argues that this is "incorrect or, at minimum, requires further factual development."  (ECF No. 9 at 3.)  Respondents also argue that petitioner failed to exhaust administrative remedies as to this claim.  (ECF No. 8 at 4.)

Section 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus."  Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004).  However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241."  Ward v. Chavez, 678

4

F.3d 1042, 1045 (9th Cir. 2012).  Because exhaustion is not required by statute, it is not jurisdictional.  Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds by Reno v. Koray, 515 U.S. 50, 54-55 (1995) (citing Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir. 1987)).  If a petitioner has not properly exhausted his claims, the district court, in its discretion, may "determine whether to excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court."  Id.  "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review."  Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (internal citation and quotation marks omitted).

Under the circumstances of this case, this Court finds that petitioner should not be excused from exhausting administrative remedies.  See Buckley v. Chestnut, 2026 WL 1030931, at *2-4 (E.D. Cal. Apr. 16, 2026) (court declined to waive the prudential exhaustion requirements because petitioner's appeal of his Matter of Joseph hearing was pending).  At a Joseph hearing, petitioner "may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention."  See Demore v. Kim, 538 U.S. 510, 514 n.3 (2003) (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002)).  The Joseph hearing process enables petitioner to challenge his mandatory detention under § 1226(c), and the immigration court has the expertise necessary to develop the record and reach a proper decision.  Relaxing the exhaustion requirement under these circumstances would encourage others to bypass the administrative exhaustion process.  Finally, in this case administrative review is likely to allow the agency to correct its own mistakes and thus avoid the need for judicial review.

"If a petitioner fails to exhaust prudentially required administrative remedies, then 'a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies,'" unless exhaustion is excused.

Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (citing Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir. 2011)).  Petitioner has provided no argument as to why exhaustion should be excused under the circumstances of his case.  Therefore, this Court finds that petitioner's claim challenging his mandatory detention under § 1226(c) should be dismissed without prejudice based on petitioner's failure to exhaust administrative remedies.

### B.    Prolonged Detention

Petitioner raises a Fifth Amendment due process claim for prolonged detention that exceeds six months.  (See ECF No. 1 at 5-6; ECF No. 9 at. 4-5.)  For the purposes of analyzing petitioner's prolonged detention claim, this Court assumes without deciding that petitioner is detained pursuant to § 1226(c).

While the Supreme Court has rejected a facial challenge to mandatory detention under § 1226(c) in Demore v. Kim, 538 U.S. 510 (2003), an as applied challenge is not foreclosed and Justice Kennedy's concurring opinion in Demore specifically noted that "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as [Kim] could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."  Id. at 532.  In addition, "[t]he Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c)."  Loba L.M. v. Andrews, et al., No. 1:25-cv-0611 JLT SAB, 2025 WL 2939178, at *4 (E.D. Cal. Oct. 16, 2025), report and recommendation adopted, 2025 WL 3187577 (E.D. Cal. Nov. 14, 2025); see Avilez, 69 F.4th at 538 (declining to determine whether due process requires a bond hearing for noncitizens detained pursuant to § 1226(c)).  "Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c), the First, Second, and Third Circuits have found that 'the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [section 1226(c)].'"  Loba L.M., 2025 WL 2939178, at *5 (quoting Reid v. Donelan, 17 F.4th 1, 7 (1st Cir. 2021); citing Black v. Decker, 103 F.4th 133, 138 (2d Cir. 2024) ("conclud[ing] that a noncitizen's constitutional right to due process precludes his unreasonably prolonged detention under section 1226(c) without a bond hearing"); German

6

Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 209-10 (3d Cir. 2020) (holding that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable)).  "[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'"  Martinez v. Clark, No. 2:18-cv-01669-RAJ, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), report and recommendation adopted, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (citation omitted); see also Loba L.M., 2025 WL 2939178, at *5.  This Court joins other courts that have found that unreasonably prolonged detention pursuant to § 1226(c) without a bond hearing can violate due process.  See Keo v. Chestnut, et al., No. 1:26-cv-1192 DJC CSK, 2026 WL 747117, at *2 (E.D. Cal. Mar. 17, 2026); Loba L.M., 2025 WL 2939178, at *5.

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary."  Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps:  the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  The Court concludes that petitioner has a protected liberty interest in his freedom from detention.  See Keo, 2026 WL 747117, at *2 (concluding clear liberty interest in freedom from detention where petitioner was

7

detained pursuant to § 1226(c) for over 37 months).  Petitioner has been detained over ten months since August 2025 and faces prolonged detention during his appeal to the BIA and further potential judicial review.  This also exceeds the time period the Supreme Court noted in Demore: "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal."  Demore, 538 U.S. at 530.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of the protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews v. Eldridge, 424 U.S. 319 (1976), to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.[4]  Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's

---

[4]  "District courts within this Circuit have adopted a variety of multi-factor tests for determining at what point a noncitizen detained pursuant to a mandatory detention statute is constitutionally entitled to a bond hearing."  Mohammed v. Warden of California City Detention Center, No. 1:26-cv-0118 DJC CSK, 2026 WL 192368, at *3 (E.D. Cal. Jan. 26, 2026) (applying Matthews test to prolonged detention claim under § 1225(b)(1)).  Cf. Keo, 2026 WL 747117, at *2 (applying seven factor test from Martinez, 2019 WL 5968089, at *7, to prolonged detention claim under § 1226(c)).  As the considerations in the various multi-factor tests are relevant to the due process analysis, the Court will address them within the Mathews framework.

8

discretion to incarcerate non-citizens is always constrained by the requirements of due process."). While petitioner's detention for over ten months is not as lengthy as other similar cases, the length of future detention is unknown and indefinite where his appeal to the BIA is pending and was received on April 27, 2026, he does not yet have a final removal order, and further judicial review is available after the BIA appeal.  (See ECF No. 8-1 at 3.)  In addition, though the record before the Court indicates that petitioner requested two continuances of his removal proceedings in September 2025 and December 2025, the record does not indicate whether the continuances were granted, for how long any such continuances resulted in delay, and whether the government requested any continuance or caused any delays.  (See ECF No. 8 at 2; ECF No. 8-1 at 3.)  The first factor therefore weighs in petitioner's favor.

Second, "[t]he risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."  See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Here, petitioner has been detained for over ten months since August 22, 2025 without a bond hearing to evaluate whether petitioner is a flight risk or a danger to the community.  (ECF No. 8-1 at 3.)  It is not this Court's role to determine whether petitioner is a danger or flight risk, and a neutral arbiter may very well determine that petitioner is a danger given his criminal history or a flight risk.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws and in public safety, but respondent's interest in detaining petitioner without a hearing is "low."  Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 19, 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025).  Detention hearings in immigration courts are routine and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094.  Overall, balancing these factors, the Court finds that petitioner is entitled to a bond hearing under the Due Process Clause where he has been detained for over ten months, his appeal to the BIA was recently filed and is still pending, and the length of his future detention is unknown

where further judicial review is available and the removal order is not yet final. See also Jose G. M. L. v. Warden of the Golden State Annex Detention Facility, et al., No. 1:26-cv-0047 TLN EFB, 2026 WL 472987, at *5 (E.D. Cal. Feb. 19, 2026) (granting preliminary injunctive relief for a bond hearing where the petitioner's detention under § 1226(c) exceeded six months). Because this Court recommends petitioner is entitled to a bond hearing based on his due process claim, the Court does not address Respondents' assertion his detention is separately mandated by 8 U.S.C. § 1225(b). (ECF No. 8 at 6-7.)

**C. Petitioner's Other Claims for Relief (Claims Two and Four)**

Because the Court recommends granting the petition on the due process claim (claims one and three), the Court need not address any additional claims (claims two and four) raised in the petition. See N.K. v. Noem, No. 1:26-cv-0292 KES SAB, 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026); Constantinovici v. Bondi, No. 3:25-cv-2405 RBM AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025). Petitioner is entitled to the habeas relief he seeks based on the Court's findings and recommendations as to claims one and three.

**V.   CONCLUSION**

In summary, the Court recommends that the petition for writ of habeas corpus be dismissed without prejudice in part and granted in part on the due process claim (claims one and three).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be DISMISSED WITHOUT PREJUDICE IN PART AND GRANTED IN PART.

2. Respondents be ordered to provide petitioner Jose Eduardo Lima (A-078-063-984) with a bond hearing before an immigration judge/ neutral decisionmaker within **seven (7) days** of the adoption of these findings and recommendations where respondents bear the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight to justify his continued detention.

3. The Clerk of the Court be directed to enter judgment in favor of Petitioner and close this case.

10

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 2, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/lima.3753.2241.imm/9

11